QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (SBN 170151)
charlesverhoeven@quinnemanuel.com
Jordan R. Jaffe (SBN 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 (facsimile)

Miles D. Freeman (SBN 299302)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (facsimile)

Deepa Acharya (SBN 267654)
deepacharya@quinnemanuel.com
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000
(202) 538-8100 (fascimile)

Attorneys for Google LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GOOGLE LLC,

Plaintiff,

v.

SIMPLEAIR, INC.,

Defendant.

SIMPLEAIR, INC.,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

CASE NO. 2:16-cv-3758-JAK-PLA

**GOOGLE LLC'S NOTICE OF MOTION AND CONSOLIDATED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(C); MEMORANDUM OF POINTS AND AUTHORITIES**

**DATE:** June 22, 2020
**TIME:** 8:30 a.m.
**PLACE:** Courtroom 10B

CASE NO. 2:20-cv-02839-JAK-PLA

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 22, 2020, at 8:30 A.M. or as soon thereafter as the matter may be heard by the Honorable John A. Kronstadt in Courtroom 10B, United States District Court for the Central District of California, First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Google LLC ("Google") shall and hereby does move the Court for an order granting dismissal in favor of Google in the above-mentioned actions.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).[1] Google brings this Motion to Dismiss on multiple, independent grounds:

- SimpleAir's claims against Google are barred by claim preclusion in view of the final judgments in *SimpleAir, Inc. v. Google Inc., et al.*, No. 2:11-cv-00416-JRG (E.D. Tex.) ("*SimpleAir I*") (Dkt. 775), and *SimpleAir, Inc. v. Google Inc., et al.*, Nos. 2:14-cv-00011-JRG and 2:13-cv-00937-JRG (E.D. Tex.) (collectively, "*SimpleAir II/III*") (Dkt. 362);
- SimpleAir's claims against Google are barred by the doctrine of *Kessler v. Eldred*, 206 U.S. 285 (1907) in view of the final judgments in *SimpleAir I* and *SimpleAir II/III*;
- SimpleAir's claims against Google are barred by issue preclusion in view of the final judgments in *SimpleAir I* and *SimpleAir II/III*; and

---

[1] Google submits this Motion pursuant to Fed. R. Civ. P. (12)(b)(6) in *SimpleAir IV*, No. 2:20-cv-02839-JAK-PLA, because Google has not yet filed an Answer in this case. Google submits this Motion pursuant to Fed. R. Civ. P. 12(c) in *SimpleAir V*, No. 2:16-cv-03758-JAK-PLA, because the pleadings are closed in that case.

Additionally, Google submits this Motion in compliance with L.R. 7-3. The parties exchanged their positions on this Motion in conjunction with preparing their Joint Rule 16(b)/26(f) Report, which was filed on April 10, 2020. *See SimpleAir IV*, Dkt. 116; *SimpleAir V*, Dkt. 105.

- The asserted claims of the asserted patents are invalid because they do not recite patent-eligible subject matter under 35 U.S.C. § 101.

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declaration of Deepa Acharya and exhibits thereto, documents on file in the instant actions, and such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 3
A. The Parties, Patents And Accused GCM Technology ........ 3
B. *SimpleAir I* District Court Proceedings ........ 5
C. *SimpleAir II/III* ........ 6
D. The Federal Circuit Opinion In *SimpleAir I* ........ 6
E. *SimpleAir IV* ........ 7
F. *SimpleAir V* ........ 10
III. ARGUMENT ........ 10
A. Claim Preclusion And *Kessler* Bar SimpleAir's Infringement Claims ........ 10
1. The Relevant Law Of Claim Preclusion ........ 10
2. All General Facts Come From The Same Nucleus Of Operative Fact. ........ 12
3. A Claim Comparison Of The Online/Offline Two-Path Requirement Mandates Dismissal ........ 13
4. A Claim Comparison Of The Addressing Data Blocks Limitations Mandates Dismissal ........ 17
5. The *Kessler* Doctrine Bars SimpleAir's Post-Judgment Claims ........ 18
B. Issue Preclusion Bars SimpleAir's Infringement Claims ........ 19
C. The Asserted Claims Do Not Contain Patent-Eligible Subject Matter Under Section 101 ........ 22
1. The Relevant Law Of Section 101 ........ 22
2. SimpleAir's Attempt To Avoid Preclusion Renders The Patents Invalid Under Section 101 ........ 23
3. Notwithstanding Preclusion Arguments, The *SimpleAir IV* And *V* Patents Do Not Contain Patent-Eligible Subject Matter ........ 24
(a) The Representative Claims Are Directed Towards The Abstract Idea Of Receiving, Sorting,

Packaging, And Transmitting Information Under *Alice* Step One ........ 26

(b) The Computer Elements Do Not Save The Claims From Abstractness Under *Alice* Step Two ........ 29

IV. CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Page**

## Cases

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) .......... 24

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) .......... 11, 16

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) .......... 19

*Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) .......... 22

*Antares Pharma Inc. v. Medac Pharma Inc.*, 771 F.3d 1354 (Fed. Cir. 2014) .......... 12

*Applied Med. Res. Corp. v. United States Surgical Corp.*, No. SACV-03-1267-CJC-MLG, 2004 WL 7333721 (C.D. Cal. Dec. 7, 2004) .......... 21

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377 (Fed. Cir. 2013) .......... 19

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) .......... 26

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .......... 24

*BioCell Tech. LLC v. Arthro-7*, No. SACV12-00516-JVS-RNB, 2012 WL 12892937 (C.D. Cal. Nov. 19, 2012) .......... 13

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971) .......... 20

*Bourns, Inc. v. United States*, 537 F.2d 486 (Ct. Cl. 1976) .......... 20

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) .......... 19

*Brown v. Felsen*, 442 U.S. 127 (1979) .......... 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) .......... 24

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) .......... 27, 28, 30

*FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) ....... 28, 29

*Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) ....... 28

*Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190 (D.N.M. 2016) ....... 28

*Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047 (9th Cir. 2005) ....... 11

*In re Hubbell*, 709 F.3d 1140 (Fed. Cir. 2013) ....... 13

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) ....... 29

*Kamilche Co. v. United States*, 53 F.3d 1059 (9th Cir. 1995) ....... 20

*Kearns v. Gen. Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996) ....... 11, 17

*Kessler v. Eldred*, 206 U.S. 285 (1907) ....... 2, 18, 19, 31

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024 (Fed. Cir. 2018) ....... 15

*Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....... 2

*McDonald's Corp. v. Rincon E., Inc.*, 26 F.3d 131 (9th Cir. 1994) ....... 11

*Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019) ....... 10

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985 (9th Cir. 2005) ....... 11

*Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333 (Fed. Cir. 2013) ....... 20, 21

*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ....... 12, 17

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....... 2

*Power Analytics Corp. v. Operation Tech. Inc.*, 2017 WL 5468179 (C.D. Cal. July 13, 2017), *aff'd sub nom.*, 748 F. App'x 334 (Fed. Cir. 2019) ....28, 29, 30

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ....20

*Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) ....10

*SimpleAir, Inc. v. Google Inc., et al. (SimpleAir I)*, No. 2:11-cv-00416-JRG (E.D. Tex.) ....*passim*

*SimpleAir, Inc. v. Google Inc., et al. (SimpleAir II/III),* 136 F. Supp. 3d 745 (E.D. Tex. 2015) ....3, 23

*SimpleAir, Inc. v. Google Inc. (SimpleAir IV)*, 884 F.3d 1160 (Fed. Cir. 2018) ....*passim*

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017) ....26

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) ....20, 21

*Verizon Servs. Corp. v. Vonage Holdings, Corp.*, 503 F.3d 1295 (Fed Cir. 2007) ....14

*Western Sys., Inc. v. Ulloa*, 958 F.2d 864 (9th Cir. 1992) ....11

**Statutory Authorities**

35 U.S.C. § 101 ....4, 22

35 U.S.C. § 121, 37 ....17, 18

37 C.F.R. § 1.321(c)(3). ....5

37 C.F.R. § 1.141 ....17

37 C.F.R. § 1.141(a) ....15

**Other Authorities**

MPEP § 201.09 (9th ed. Mar. 2014) ....12

Restatement § 24(2), ....11

## TABLE OF EXHIBITS

| Exhibit Number | Exhibit |
|---|---|
| Exhibit A | *SA IV*, Dkt. 50, Memorandum and Order (Sept. 2, 2016) |
| Exhibit B | *SA I*, Dkt. 775, Final Judgment (Aug. 12, 2016) |
| Exhibit C | *SA II/III*, Dkt. 362, Final Judgment (Nov. 4, 2015) |
| Exhibit D | *SA IV*, Dkt. 17, Defendant Google Inc.'s Corrected Motion to Dismiss (May 17, 2016) |
| Exhibit E | Comparison of the Representative Claims In *SimpleAir IV* and *V* Patents |
| Exhibit F | U.S. Patent No. 6,021,433 |
| Exhibit G | U.S. Patent No. 7,035,914 |
| Exhibit H | U.S. Patent No. 8,572,279 |
| Exhibit I | U.S. Patent No. 8,601,154 |
| Exhibit J | U.S. Patent No. 8,639,838 |
| Exhibit K | U.S. Patent No. 8,656,048 |
| Exhibit L | U.S. Patent No. 9,356,899 |
| Exhibit M | U.S. Patent No. 9,380,106 |
| Exhibit N | Diagram showing the familial relationship of the SimpleAir patents and their corresponding litigations |
| Exhibit O | File History of U.S. App. No. 14/174,666 (issued as U.S. Patent No. 9,380,106), Non-Final Office Action mailed May 13, 2014 |
| Exhibit P | Terminal Disclaimers for U.S. Patent Nos. 8,572,279; 8,601,154; 8,639,838; 8,656,048; 9,356,899; 9,380,106 |

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| ’433 Patent | U.S. Patent No. 6,021,433 |
| ’914 Patent | U.S. Patent No. 7,035,914 |
| ’279 Patent | U.S. Patent No. 8,572,279 |
| ’154 Patent | U.S. Patent No. 8,601,154 |
| ’838 Patent | U.S. Patent No. 8,639,838 |
| ’048 Patent | U.S. Patent No. 8,656,048 |
| ’899 Patent | U.S. Patent No. 9,356,899 |
| ’106 Patent | U.S. Patent No. 9,380,106 |
| *SA I* | *SimpleAir, Inc. v. Google Inc.*, No. 2:11-cv-00416-JRG (E.D. Tex.) |
| *SA I* Appeal | *SimpleAir, Inc. v. Sony Ericsson Mobile Commc’ns AB*, 820 F.3d 419 (Fed. Cir. 2016) |
| *SA II/III* | *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-00011-JRG (E.D. Tex.); *SimpleAir, Inc. v. Google Inc.*, No. 2:13-cv-00937-JRG (E.D. Tex.) |
| *SA IV* | *SimpleAir, Inc. v. Google Inc.*, No. 2:16-cv-00388-JRG (E.D. Tex.) |
| *SA IV* Appeal | *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018) |
| *SA V* | *Google Inc. v. SimpleAir, Inc.*, No. 2:16-cv-03758-JAK-PLA (C.D. Cal.) |
| GCM | Google’s Cloud Messaging and Cloud to Device Messaging Services |
| FCM | Google’s Firebase Cloud Messaging Services |
| C2DM | Google’s Android Cloud to Device Messaging Services |

# I. INTRODUCTION

Google brings this Motion to put an end to SimpleAir's nine-plus year ongoing campaign of serial, redundant patent infringement actions—suits that repeatedly attack the same Google technology using continuation patents terminally disclaimed to the same parent patent. In the parties' first trial, SimpleAir argued to a Texas jury:

> They say that SimpleAir has filed other lawsuits against Google. One, two, three. And they're suggesting to you that in each one of those lawsuits we're going to come back and ask for another hundred something million dollars and keep collecting and collecting and collecting. Do you think that the court's going to let that happen? Do you think that another jury is going to let that happen? That isn't how it works.

*SA I*, Dkt. 654, Jan. 17, 2014 A.M. Trial Tr. at 112:21-113:4. As the Texas district court previously observed in granting Google's motion to dismiss in *SA IV*, "[t]his Court is persuaded now, just as the jury was persuaded in 2014, that indeed: *that isn't how it works*." *SA IV*, Dkt. 50 (Ex. A) at 11 (emphasis in original). SimpleAir is precluded from re-litigating the same claims and issues again and again.

SimpleAir's campaign of serial litigation has only gotten worse since it made that broken promise in 2014. Indeed, SimpleAir's two actions here are its *fourth* and *fifth* attempt at accusing Google of infringing its terminally disclaimed continuation patents on the same invention against the same products. In its *first*, *second*, and *third* attempts, SimpleAir lost each time. *SA I*, Dkt. 775 (Ex. B); *SA II/III*, Dkt. 362 (Ex. C). In 2016, the Federal Circuit held Google's accused products in SimpleAir's first lawsuit did not infringe as a matter of law. *SA I* Appeal, 820 F.3d 419, 421 (Fed. Cir. 2016). In SimpleAir's second and third lawsuits, a Texas jury found the *same* products did not infringe a parent SimpleAir patent on the *same* invention. Faced with the Federal Circuit's findings about "the present invention" from the first case, SimpleAir voluntarily withdrew its post-trial motion for judgment as a matter of law in the second and third cases and did not appeal the jury's verdict. *SA II/III*, Dkt. 405.

Now, after losing three prior patent infringement lawsuits against Google, SimpleAir seeks its fourth and fifth bites at the apple. As in the prior actions,

SimpleAir accuses the same products—Google's Cloud Messaging, Cloud to Device Messaging Services, and Firebase Cloud Messaging[2] (collectively, "GCM")—of infringing its terminally-disclaimed, continuation patents directed to a single invention. These fourth and fifth actions are no different than the prior three cases—SimpleAir accuses the same products and asserts the same invention. As the Federal Circuit explained in the *SA IV* Appeal, claim preclusion bars SimpleAir from suing the same defendant, accusing the same products, and asserting the same invention with patentably indistinct claims. The *Kessler* doctrine further precludes SimpleAir's infringement claims against GCM, because GCM has acquired the status of a non-infringing product through final resolution of the three prior lawsuits. And issue preclusion forecloses SimpleAir from re-litigating the issues the Federal Circuit and the district court resolved on final judgment in *SA I* and *SA II/III*. If preclusion were no bar to SimpleAir's successive litigations, SimpleAir might then bring a sixth, seventh, or eighth lawsuit, asserting yet more continuation patents that are just "slight variations" of the preceding patents, even after the patents have expired. Such a ruling would render the doctrines of preclusion obsolete, and would greatly frustrate the interest of finality, as litigation would never be "final" so long as one continuation patent remained unasserted. Therefore, this Court should grant dismissal and finally bring this nearly decade-long ordeal to an end.

Alternatively, Google respectfully requests this Court dismiss this case on the grounds that each asserted claim is invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101. When evaluating whether the claimed SimpleAir invention was invalid under Section 101 in *SA II/III*, the court there found the claims patentable because of the claimed two-path architecture (i.e., the "present invention").

---

[2] In *SA V*, SimpleAir accused a rebranded version of GCM technology, from "Google Cloud Messaging (GCM)" to "Firebase Cloud Messaging (FCM)". Dkt. 24, ¶ 15. The accused GCM and FCM technology is the same.

*SA II/III*, 136 F. Supp. 3d 745, 751-752 (E.D. Tex. 2015). To the extent SimpleAir now argues the asserted patents do not include "the present invention" described in the common specification—i.e., the two-path architecture—SimpleAir removes the basis on which the court in *SA II/III* found SimpleAir's alleged invention patentable under Section 101. Even if they incorporate the "present invention," the claims are still invalid under Section 101. The asserted claims only recite using generic computer hardware and generic computer functions to receive, sort, package, and transmit information, which does not impart patent-eligible subject matter under Section 101.

## II. BACKGROUND

### A. The Parties, Patents And Accused GCM Technology

SimpleAir has accused Google of patent infringement in five separate cases, asserting eight patents. In all five suits, the parties have been the same. The accused technology—GCM—has been the same.[3] And the asserted invention has been the same. All the patents SimpleAir has asserted over the years are continuation patents from the same family. All the patents have the same title, name the same inventors, contain the same specification and claim priority to an application filed in 1996. Exs. F-M. Specifically, all the asserted patents are continuations of the parent patent, the '433 Patent. *See* Ex. N (diagram showing the familial relationship of the SimpleAir patents and the corresponding litigations in which these patents were asserted).

---

[3] GCM is a system of distributed servers that handles messages from first-party and third-party servers that are intended for delivery to GCM-enabled mobile devices, such as Android mobile phones.

In the "Summary of the Invention," the common specification explains that "the present invention . . . provides a system and method for data communication connecting on-line networks with on-line and off-line computers." Ex. G at 2:51-54. Figure 1 describes two communication paths for online and offline computers:




Ex. G, Fig. 1 (annotated to show the two paths). In particular, in 1996, the time to which each of the continuation patents claims priority, computer users would connect to the Internet or some other online service via a modem and telephone line, and disconnect when the dial-up session was completed. Ex. G at 7:26-30; *see also SA I* Appeal, 820 F.3d at 430. This is depicted in Path 1 on the left in Figure 1, above. When disconnected, the computer could not receive information from online sources. The applicants sought a way for a computer to receive notifications from online sources "even while it is off-line." *SA I* Appeal, 820 F.3d at 430. The alleged invention uses a second path to send notifications when the computer was offline, as depicted in Path 2 on the right in Figure 1, above. *Id.* at 426-27, 430. In the sole illustrated embodiment of the invention, the second path is achieved using the pager technology existing in 1996. Thus, the second path "connect[s] online information sources 12 with on- and off-line computers, such as personal computer 14." Ex. G at 5:30-33; *see also SA I* Appeal, 820 F.3d at 430-31.

It is undisputed that GCM only uses one path to send notifications, unlike

SimpleAir's invention. As the Federal Circuit has already held, GCM "sends messages over the same communication path as other Internet data—it does not use a separate path," which is a required "key aspect of the invention." *SA I* Appeal, 820 F.3d at 431. Thus, the dispute is over—SimpleAir lost. Nonetheless, SimpleAir has continued its campaign, accusing Google of infringing additional various "continuation" patents covering the same invention.

One may wonder: Why did the PTO issue all of these patents if they all cover the same invention? The answer can be found in the PTO's "terminal disclaimer" process. Under this process, if the PTO rejects a continuation application for double patenting, an applicant can side-step the entire issue simply by filing a terminal declaimer, which "disclaims" the application to the expiration date of an earlier, issued patent. *See* 37 C.F.R. § 1.321(c)(3). Here, for each asserted patent in all five cases, apart from the original parent (the '433 Patent), the PTO rejected the application on the ground that there was no new invention beyond that claimed in the '433 Patent. For each patent, the PTO found "[a]lthough the claims at issue are not identical, they are not patentably distinct from each other." Ex. O at 3. In response, SimpleAir acquiesced to the rejection each time, filing terminal disclaimers to overcome the rejection. *See* Ex. P. By using "terminal disclaimers," SimpleAir avoided having to make any showing that each or any of its multiple continuation patents was patentably different from the '433 Patent—each time, the PTO looked at the issue and it rejected the continuation claims for double patenting; and each time in response, SimpleAir elected to avoid the issue by filing a terminal disclaimer.

### B. *SimpleAir I* District Court Proceedings

On September 15, 2011, SimpleAir filed its first patent infringement suit against Google, asserting that GCM infringed the asserted claims of the '914 Patent and the '433 Patent. *SA I*, Dkt. 1; Exs. F-G. In its claim construction order, the district court essentially "read out" the online/off line two-path invention, holding that online or offline to a data channel did not require two paths and only required a single path

to the Internet. *SA I*, Dkt. 379 at 8-17. Google objected to the court's construction, which would permit a device to be both online and offline at the same time.

SimpleAir dismissed the '433 Patent with prejudice just before trial. Thus, SimpleAir voluntarily dismissed, with prejudice, the sole patent it obtained without using a terminal disclaimer. The parties proceeded to trial on the '914 Patent, where a jury found that Google's GCM infringed the asserted '914 claims, as construed by the district court. *SA I*, Dkt. 601. Google appealed the district court's claim construction and the jury verdict. *SA I*, Dkt. 767.

### C. *SimpleAir II/III*

On November 4, 2013 and January 8, 2014—just before the trial in *SimpleAir I*—SimpleAir filed two new complaints against Google, which were consolidated into *SA II/III*. *SA II/III*, Dkts. 1, 42. SimpleAir asserted two more continuation patents in *SA II/III*—the '154 Patent and the '279 Patent. *SA II/III*, Dkt. 1; Exs. H-I. On October 7, 2015, SimpleAir proceeded to trial, asserting claims of the '279 Patent against GCM—the same accused product in *SA I*. *SA II/III*, Dkt. 341. During the trial, on October 12, 2015, SimpleAir dismissed the '154 Patent with prejudice. *SA II/III*, Dkts. 340, 374, 376. At the *SA II/III* trial, Google presented new noninfringement arguments, including that the accused "transmission gateway" did not "prepare the addressed data blocks for transmission" and "initiate transmission of the addressed data blocks to receivers." *SA II/III*, Dkt. 390 at 11. The asserted claims required addressing data blocks—that is, the blocks must contain data and must contain an address. *Id*. at 12. The accused data blocks in GCM were not an "addressed data block," because they lacked the "address" required by the claim. *Id*. Agreeing with Google, on October 12, 2015, the jury returned a verdict of non-infringement in Google's favor. *SA II/III*, Dkt. 348. On February 8, 2016, SimpleAir filed a motion for judgment as a matter of law. *SA II/III*, Dkt. 386.

### D. The Federal Circuit Opinion In *SimpleAir I*

On April 1, 2016, while SimpleAir's JMOL motion was pending in *SA II/III*,

the Federal Circuit issued its decision in *SA I*. A unanimous panel of the Federal Circuit held the claim construction to be error, reversed the infringement verdict, and ruled that Google does not infringe the '914 Patent claims as a matter of law. *SA I* Appeal, 820 F.3d at 421, 430-432. The Federal Circuit explained that the invention "contemplates the use of two distinct paths, such that the data channel from which the device is offline must be different from the communication path used to receive notifications." *Id.* at 431. The Federal Circuit then held that the district court erred in its construction of a "data channel" and "whether said devices are ***online or offline from a data channel associated with each device***" and concluded that no reasonable jury could find infringement under the correct constructions. *Id.* at 421, 431 (emphasis added). The court concluded that Google did not infringe because it was undisputed that the accused GCM "sends messages over the same communication path as other Internet data—it does not use a separate path" as a "key aspect of the invention" requires. *Id*. at 430-31. The Federal Circuit remanded with instructions to enter a final judgment of no infringement. *Id.* at 431-32. On August 12, 2016, the district court entered a new final judgment of non-infringement consistent with the Federal Circuit's decision. *SA I*, Dkt. 775 (Ex. B).

In *SA II/III*, upon receiving the Federal Circuit's ruling, Google filed a Rule 60 Conditional Motion to Alter or Amend the Judgment based on issue preclusion. *SA II/III*, Dkt. 402. In response, SimpleAir withdrew its pending JMOL and did not appeal the jury verdict of no infringement in *SA II/III*. *SA II/III*, Dkts. 405, 406.

**E. *SimpleAir IV***

On April 8, 2016, after the Federal Circuit's decision in *SA I* and the jury verdict in *SA II/III* had all been resolved in Google's favor, SimpleAir filed the fourth lawsuit against Google. *SA IV*, Dkt. 1. SimpleAir made a strategic choice once it read the Federal Circuit's decision. Within days of that decision, SimpleAir picked two more patents from its arsenal of continuations and filed the complaint in *SimpleAir IV*. As

the district court in *SA IV* determined and SimpleAir later admitted,[4] "[t]his was clearly an intentional and strategic decision." *SA IV*, Dkt. 50 at 9 (Ex. A).

The asserted patents are the '838 Patent and the '048 Patent. *SA IV*, Dkt. 1; Exs. J-K. Both patents issued during the earliest stages of *SA II/III*.[5] Like the '914, '279, and '154 Patents, the '838 and '048 Patents are terminally disclaimed continuation patents, sharing the same title, named inventors, specification and patent term. Exs. J-K, P. The accused product in this case is, once again, GCM. *SA IV*, Dkt. 1 at ¶ 1.

On May 17, 2016, Google moved to dismiss SimpleAir's Complaint on the grounds of claim preclusion and the *Kessler* doctrine. *SA IV*, Dkt. 17 (Ex. D). Google argued that both the '838 and '048 Patents could have and should have been asserted in the earlier *SA II/III* cases, and the two patents are terminally-disclaimed, continuation patents directed to the very same invention that the jury in that case found Google did not infringe. *Id.* at 1-2, 8-19. Agreeing with Google, the district court granted Google's motion to dismiss, in part because patent applicants filed a terminal disclaimer to overcome obviousness-type double patenting rejections indicated that the '838 and '048 Patents were patentably indistinct from the earlier patents. *SA IV*, Dkt. 50 at 8 (Ex. A). SimpleAir appealed the decision. *SA IV*, Dkt. 53.

On appeal, the only disputed element for claim preclusion was whether *SA IV* involves the same cause of action as the prior cases. *SA IV* Appeal, 884 F.3d 1160, 1165 (Fed. Cir. 2018). The Federal Circuit agreed with Google "that claim preclusion is not foreclosed because SimpleAir asserted patents in this case that were not before the district court in *SimpleAir I-III*" and that "there is substantial overlap between

---

[4] SimpleAir conceded that even though it could have asserted the '038 and '048 Patents in *SimpleAir II/III*, it made the tactical decision not to because it believed "that case was already complex enough." *SA IV* Appeal, Dkt. 16 at 21.

[5] The '838 Patent issued before SimpleAir filed its First Amended Complaint in *SA II/III*, and the '048 Patent issued five days after (and nearly a month before Google responded to the Amended Complaint). *SA II/III*, Dkts. 17, 23, 24.

*SimpleAir IV* and *SimpleAir I-III*, as the asserted patents all share a common specification and terminal disclaimer to a common parent[.]" *Id.* at 1166. The Federal Circuit also concluded that "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent." *Id.* at 1168. However, the Federal Circuit reversed the district court's order dismissing the case, holding that it was reversible error for the district court to rely solely on the terminal disclaimers to hold that the continuation patents are patentably indistinct variations of their parent patents without conducting a claim-by-claim analysis. *Id.* at 1167-68.

Even while remanding, however, the Federal Circuit made clear its view that the '838 and '048 Patents were not patentably distinct, agreeing with Google that "whether the selected remote computing devices are online or offline ***to the information providers of the received data***" as claimed in the '838 and '048 Patents is no different than "whether said computing devices are online or offline ***from a data channel associated with each device***" as claimed in the patents raised in the earlier cases. *Id*. at 1168 (emphasis in original). The Federal Circuit went on to state that "***[t]he '838 and '048 patents still rely on the same previously asserted communications architecture with two separate pathways for online and offline communications.***" *Id*. (emphasis added).

In addition, the Federal Circuit in *SA IV* recognized SimpleAir's tactical decisions in prosecuting and litigating these cases, and it concluded that the following conduct by SimpleAir is relevant to a preclusion analysis: (1) SimpleAir's "strategic delay" in bringing its fourth suit against Google, and (2) SimpleAir's long-ago broken assurance to the jury in *SA I* that "it would not engage in duplicative and burdensome litigation." *Id.* at 1169; *see also SA IV*, Dkt. 50 at 9, 11 (Ex. A). SimpleAir's tactical decisions through this nearly decade-long serial litigation, if not halted, would undermine bedrock principles of finality and judicial economy.

**F. *SimpleAir V***

Because of SimpleAir's practice of filing serial litigations against Google in Texas, upon learning that two new continuation patents had issued from the same family, Google filed a declaratory judgment action in this Court, the home of the SimpleAir inventors, on May 30, 2016. *SA V*, Dkt. 1. Google asserted the '899 and '106 Patents. Exs. L-M. The '899 Patent issued on May 31, 2016, and the '106 Patent issued on June 28, 2016. *Id.* The patents share the same specification as the previously asserted patents and are terminally disclaimed to the '433 Patent. *Id.*; *see also* Ex. P.

On August 5, 2016, SimpleAir filed counterclaims for infringement of the '899 and '106 Patents. *SA V*, Dkt. 24. On November 1, 2016, SimpleAir and Google agreed to stay this case pending the Federal Circuit appeal in *SA IV.* Dkt. 40-41.

## III. ARGUMENT

### A. Claim Preclusion And *Kessler* Bar SimpleAir's Infringement Claims

#### 1. The Relevant Law Of Claim Preclusion

"Claim preclusion bars a party in successive litigation from pursuing claims that were raised or could have been raised in [a] prior action." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (quotations and citation omitted). Claim preclusion exists to "encourage[] reliance on judicial decisions, bar[] vexatious litigation, and free[] the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Serial litigation of the same invention against the same accused product "is exactly what claim preclusion is designed to prevent." *Senju Pharm. Co., Ltd. V. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014).

Under Ninth Circuit law,[6] claim preclusion bars an action where a prior suit:

[6] In a patent case, claim preclusion is a mixed question of regional circuit law and Federal Circuit law. *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). However, "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases," and the Federal Circuit therefore applies its own law to that issue. *Id.*

(1) reached a final judgment on the merits; (2) involved identical parties (or their privies); and (3) involved the same claim or cause of action. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quotations and citation omitted). There is no dispute that the first two elements of claim preclusion are met. *SA I* and *II/III* resulted in a final judgment of non-infringement for Google.[7] *SA I*, Dkt. 775 (Ex. B); *SA II/II*, Dkt. 362 (Ex. C). And in *SA I* and *II/III* the parties are the same as those here—SimpleAir and Google. As the Federal Circuit held, the only disputed issue is whether these cases and the prior cases "involve the same claim or cause of action."[8]

Although variously formulated, the concept of "sameness" boils down to whether the second action arises from "a common nucleus of operative fact" as the first action. *Mpoyo*, 430 F.3d at 987; *see also Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323-24 (Fed. Cir. 2008). The test is sometimes also referred to as the "same transaction," "same cause of action" and "same claim." However phrased, the analysis looks at the facts and circumstances to assess "whether two events are part of the same transaction or series" which "depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Mpoyo*, 430 F.3d at 987 (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).

In the *SA IV* Appeal, the Federal Circuit rejected that "[e]ach patent asserted raises an independent and distinct cause of action." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996). Instead, the Federal Circuit agreed with Google and

---

[7] Entry of judgment by the district court is sufficiently "final" to warrant application of claim preclusion. *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (finding that entry of judgment by trial court constitutes final judgment for purposes of claim preclusion); *McDonald's Corp. v. Rincon E., Inc.*, 26 F.3d 131, at *1-2 (9th Cir. 1994) (same).

[8] The Federal Circuit's opinion was based on an application of Fifth Circuit law, because at the time, the case was pending in the Eastern District of Texas. However, both Fifth Circuit law and Ninth Circuit law require that the earlier case and the later case involve the same cause of action. *SA IV* Appeal, 884 F.3d at 1165.

reaffirmed the "transactional approach." *SA IV* Appeal, 884 F.3d at 1166; *see also id.* ("'What factual grouping constitutes a "transaction" . . . [is] to be determined pragmatically,'" Restatement § 24(2), not through a rigid rule that would prevent courts from evaluating the extent of factual overlap between cases."). In applying the "transactional approach" to the situation of continuation patents, the Federal Circuit adopted a new standard: "where different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same. In applying that standard to the particular context here, ***we conclude that claims which are patentably indistinct are essentially the same***." *Id.* at 1167 (emphasis added).

2. All General Facts Come From The Same Nucleus Of Operative Fact.

The asserted patents in *SA IV* and *SA V* share a common nucleus of operative facts with the previously asserted patents—they have the same title, share the same specification, and are directed to the same invention. Exs. F-M. Since these are continuation patents, *see* Ex. N, by definition, the claims of the asserted patents must be directed to the "same invention" as disclosed in their common parent application and must share the same specification as their parent. *Antares Pharma Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014) ("A continuation application is 'a second application for the ***same invention*** claimed in a prior non-provisional application . . . .'") (quoting MPEP § 201.09 (9th ed. Mar. 2014)) (emphasis added).[9]

The substantial overlap between the SimpleAir suits is further amplified by the

[9] In fact, because all claims in SimpleAir's continuation application for the child patents necessarily could have been included in the original parent application, SimpleAir's entire family of separately issued continuation patents, which include the asserted patents here, are equivalent to a single patent under existing law. Thus, the asserted patents in this and the prior litigations do not give rise to legally-separable property rights (or causes of action). *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 850705, at *7 (N.D. Cal. Mar. 13, 2012) ("each claim [in a patent] represents merely different shades of the same invention").

terminal disclaimers that SimpleAir filed for each asserted patent to overcome obviousness-type double-patenting rejections at the USPTO. Ex. P; *SA IV* Appeal, 884 F.3d at 1168 (holding that the presence of a terminal disclaimer is "very relevant to that inquiry," and constitutes a "strong clue" in favor of claim preclusion). Like the prior asserted patents, the '038, '048, '899 and '106 Patents at issue here are terminally disclaimed to the '433 Patent. Ex. P. In each case the USPTO found that "[a]lthough the claims are issue are not identical, ***they are not patentably distinct*** from each other." Ex. O at 3 (emphasis added).[10] In response to these rejections, the applicants filed terminal disclaimers and did not argue against this PTO finding.

SimpleAir cannot now have its cake and eat it too. The applicants filed terminal disclaimers to overcome the obviousness-type double-patenting rejections. But having overcome these rejections, it cannot now turn around and serially assert the same invention over and over again even after multiple final adjudications of these issues. *See In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (holding that a terminal disclaimer "is to prevent multiple infringement suits by different assignees asserting ***essentially the same patented invention***") (emphasis added).

3. <u>A Claim Comparison Of The Online/Offline Two-Path Requirement Mandates Dismissal</u>

As explained above, the Federal Circuit held that the "present invention" to all patents in the SimpleAir family was a two-path architecture, and that this invention was the sole alleged invention of this SimpleAir patent family. *SA I* Appeal, 820 F.3d at 419, 430-31; *supra* § II(D). To reach its decision, the Federal Circuit relied on the common specification's repeated and consistent description of the "present invention" as this two-path architecture. *Id.* at 430 ("[T]he present invention" enables "remote computer 14 [to] receive information instantly—even while it is offline (i.e., not

[10] This Court may take judicial notice of terminal disclaimers, which are public record on the USPTO website. *See BioCell Tech. LLC v. Arthro-7*, No. SACV12-00516-JVS-RNB, 2012 WL 12892937, at *7 n.6 (C.D. Cal. Nov. 19, 2012).

connected to the Internet or some other on-line service."); *see also Verizon Servs. Corp. v. Vonage Holdings, Corp.*, 503 F.3d 1295, 1308 (Fed Cir. 2007) ("When a patent thus describes features of the 'present invention' as a whole, this description limits the scope of the invention."). The Federal Circuit reached the same conclusion in *SA IV*. *SA IV* Appeal, 884 F.3d at 1168 ("The '838 and '048 patents still rely on the same previously asserted communications architecture with two separate pathways[.]").

The earlier non-infringed claims are directed to this two-path architecture:

- claim 1 of the '433 patent recites a method for transmitting data "from an information source" to "remote computing devices" whether "said ***computing devices are on or off***" (Ex. F at 32:45-67 (emphasis added));
- claim 1 of the '914 Patent recites a method for transmitting data "from an information source" to "selected remote devices" whether "***said computing devices are online or offline*** from a data channel associated with each device" (Ex. G at 33:16-35 (emphasis added));
- claim 1 of the '279 Patent recites "a system to transmit data from an information source to remote computing devices" whether "***the remote computing devices are online or offline*** from a data channel associated with each remote computing device" (Ex. H at 32:46-64 (emphasis added)); and
- claim 1 of the '154 Patent recites "a method to transmit data from an information source ... to remote computing devices" whether "***the remote computing devices are online or offline*** from a data channel associated with the remote computing devices" (Ex. I at 32:38-67 (emphasis added)).

The asserted claims here, are also directed to this same two-path architecture:

- claim 1 of the '048 Patent recites a "method for transmitting data to selected remote computing devices" whether "***the selected remote computing devices are online or offline*** to the information providers of the received data" (Ex. K at 32:20-38 (emphasis added));
- claim 1 of the '838 Patent likewise claims a system for "transmitting the messages to the selected remote computing devices" whether "***the selected remote computing devices are online or offline*** to the information providers of the received data" (Ex. J at 32:19-41 (emphasis added)); and
- claim 9 of the '106 Patent requires transmission "whether the ***selected remote computing devices are online or offline*** to the information provider" (Ex. M at 33:27-43 (emphasis added)).

By reciting the same "online or offline" language as the '914 Patent, the claims in *SimpleAir IV* and *SimpleAir V* implicate the same two-path architecture set forth in every patents in the SimpleAir family that the Federal Circuit explicitly held GCM did not infringe.

The similarities between the claims is further corroborated by the Federal Circuit's conclusion that "online or offline to the information providers" as used in the '838, '048, and '106 Patents is not materially broader than "online or offline from a data channel" as used in SimpleAir's previously asserted patents and in the '899 Patent. *SA IV* Appeal, 884 F.3d at 1168. According to the Federal Circuit: "SimpleAir has not presented persuasive argument why 'online or offline to the information providers' is different from 'online or offline from a data channel.'" *Id.* On this basis, the Federal Circuit determined that the *SA IV* patents are not "fundamentally different invention[s] from those patents asserted in the previous suits." *Id*. Additionally, in *SA II/III*, SimpleAir persuaded that court that a "data channel" is the same as a path to or from an "information source," and it is now estopped from arguing otherwise. *SA II/III*, Dkt. 107 at 56-61. The conclusion reached by the Federal Circuit in *SimpleAir IV* similarly extends to the '106 and '899 Patents. *See Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1035 (Fed. Cir. 2018) (concluding that claim preclusion was likely to apply because "[w]hile the language of the claim terms changed, the scope of the claims did not materially change").

Further, no additional limitation in the dependent claims change the two-path architecture of the invention, as SimpleAir concedes. *SA IV*, Dkt. 65 at 11 ("a dependent claim does not recite a 'fundamentally different invention'"); 37 C.F.R. § 1.141(a) ("Two or more independent and distinct inventions may not be claimed in one national application . . . ."). Therefore, if independent claims 1 of the '838, '048, '899, and '106 Patents are essentially the same as the previously asserted non-infringing claim (as is true here, because all claims are directed towards the same invention), then dependent claims of these patents must also be essentially the same

as a previously asserted, non-infringed claim. SimpleAir cannot avoid claim preclusion by relying on narrower claims than those already held not infringed.

While certain asserted claims in *SA V* do not specifically contain the same "online or offline" language,[11] these patents are still directed to this two-path architecture. The Federal Circuit in both *SA I* and *SA IV* made clear that the two-path architecture—which is common to every specification in the SimpleAir family, including the specifications in the '899 and '106 Patents at issue in *SA V*—applies to the *entirety* of the invention. *See SA I* Appeal, 820 F.3d at 431 ("[I]t is evident that the invention contemplates the use of two distinct paths, such that the data channel from which the device is offline must be different from the communication path used to receive notifications."); *SA IV* Appeal, 884 F.3d at 1168 (same). Since all of the claims in the '899 and '106 Patents are directed to this two-path architecture, the claims are essentially the same as those asserted in *SA I* and *SA II/III.*

In addition, unasserted claims 17 and 25 of the '899 Patent in *SA V* also require transmission "whether ***the selected remote devices are online or offline*** from a data channel to the information source from which the data was received." Ex. L at 33:52-34:7, 34:30-46 (emphasis added). SimpleAir cannot escape claim preclusion merely by strategically selecting certain claims to assert within a single patent and not asserting others. That would run contrary to the "pragmatic[]" "transactional approach" required by the Federal Circuit. *SA IV* Appeal, 884 F.3d at 1166. Rather, "[i]n a patent suit, essential transactional facts include both ***the asserted patents*** and the accused activity." *Id.* at 1165 (citing *Senju*, 746 F.3d at 1349; *Acumed*, 525 F.3d at 1324) (emphasis added). Thus, the Court should evaluate not just the particular

---

[11] Asserted claim 9 of the '106 Patent includes "online or offline" claim language. Ex. M at 33:27-43 ("whether the selected remote computing devices are online or offline to the information provider"). Asserted claims 1 and 9 of the '899 Patent and asserted claims 1 and 16 of the '106 Patent do not expressly recite "online or offline" claim language. Ex. L at 32:49-67, 33:19-36; Ex. M at 32:49-62, 34:10-27.

claims SimpleAir has chosen to assert in a bald attempt to avoid preclusion, but the entirety of the patent and claims. Doing so here confirms that the asserted causes of action are part of the same nucleus of operative fact as the prior cases because they once again include claims with the same online/offline language.

Moreover, the presence of these unasserted claims within the same patent supports preclusion because "two independent and distinct inventions ***can not be claimed in the same patent***." *Kearns*, 94 F.3d at 1555 (citing 35 U.S.C. § 121) (emphasis added); *accord Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 850705, at *7 (N.D. Cal. Mar. 13, 2012) ("Under current USPTO guidelines, there is a presumption that each issued patent contains only one independent and distinct invention. MPEP 802; *see* 35 U.S.C. 121, 37 C.F.R. 1.141."). Any argument that these unasserted claims contain an "independent and distinct invention" would violate this precedent and USPTO guidelines. These unasserted claims further support the common-sense conclusion that the asserted claims are all patentably indistinct and essentially the same as their parent patents.

4. A Claim Comparison Of The Addressing Data Blocks Limitations Mandates Dismissal

To further warrant claim preclusion, all of the asserted claims in *SA II/III* and *SA IV* and *V* are directed to assigning addresses to data blocks. The asserted '279 claim in *SA II/III* required a "transmission gateway" that is "communicatively coupled to one or both of the central broadcast server and the information gateway" and that is "configured to prepare ***the addressed data blocks*** for transmission to receivers communicatively coupled to the remote computing devices and initiate transmission of ***the addressed data blocks*** to the receivers." Ex. H at 32:46-64 (claim 1) (emphasis added). The *SA II/III* court construed "transmission gateway" to mean "one or more software programs (or a portion of a program) that interface with the other resources used to transmit ***the addressed data blocks*** and that are configured to prepare the addressed data blocks for transmission to receivers communicatively coupled to the

remote computing devices and initiate transmission of ***the addressed data blocks*** to the receivers." *SA II/III*, Dkt. 107, at 50-51 (emphasis added).

During the *SA II/III* trial, Google argued that the accused "transmission gateway" did not "prepare the addressed data blocks for transmission" and "initiate transmission of the addressed data blocks to receivers." *SA II/III*, Dkt. 390 at 11; *see also SA II/III*, Dkt. 359 at 74:23-77:7. As explained above, the asserted '279 claims require that the accused blocks address data blocks—that is, the blocks must contain data and must contain an address. *SA II/III*, Dkt. 390 at 12. However, the accused data blocks in GCM were not an "addressed data block," because they lacked the "address" required by the claim. *Id*. Agreeing with Google, the jury returned a verdict of non-infringement in Google's favor. *SA II/III*, Dkt. 348.

Each of the asserted claims in *SA IV* and *SA V* contain this same language, requiring addressed data blocks:

- claim 1 of the '048 Patent requires "assigning addresses to the data blocks" (Ex. K at 32:20-38);
- claim 1 of the '838 Patent requires a "transmission gateway" (which the *SAII/III* court construed as requiring addressed data blocks) and "assign[ing] addresses to the data blocks" (Ex. J at 32:19-4);
- claims 1 and 9 of the '899 Patent and claim 16 of the '106 Patent requires "a second gateway . . . to assign[] addresses to the data blocks" (Ex. L at 32:49-67, 33:19-36; Ex. M at 34:10-27); and
- claims 1 and 9 of the '106 patent requires "the information provider providing data . . . for the central broadcast server to . . . assign addresses" (Ex. M at 32:49-62, 33:27-43).

Since all of the asserted claims in *SA IV* and *V* are directed to addressing data blocks, the claims are essentially the same as those asserted in *SA II/III.* SimpleAir should be precluded from also raising the same infringement allegations here.

5. <u>The *Kessler* Doctrine Bars SimpleAir's Post-Judgment Claims</u>

SimpleAir's claims against Google are also barred by the doctrine set forth in *Kessler v. Eldred*, 206 U.S. 285 (1907). The Supreme Court established the *Kessler* doctrine to shield alleged infringers from successive, harassing litigation by a

patentee. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) ("The *Kessler* doctrine . . . allow[s] an adjudged ***non-infringer*** to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.") (emphasis in original). *See SA IV*, Dkt. 17 at 23-27 (Ex. D) (explaining *Kessler* doctrine). The *Kessler* doctrine squarely applies here. The Federal Circuit in *SA IV* held that:

> [i]f on remand, the district court determines that the claims of the '838 and '048 patents are patentably indistinct from those previously adjudicated, and are therefore claim-precluded with respect to pre-judgment GCM services, then the Kessler doctrine would also bar SimpleAir's assertions of those patents against Google's provision of essentially the same GCM services post-judgment.

*SA IV* Appeal, 884 F.3d at 1170. Therefore, if this Court finds that SimpleAir's claims here are patentably indistinct from its claims in the earlier cases, and thus SimpleAir's claims are precluded, the *Kessler* doctrine also applies to preclude post-judgment GCM services.

**B. Issue Preclusion Bars SimpleAir's Infringement Claims**

SimpleAir's infringement claims are also foreclosed under the doctrine of issue preclusion—also known as collateral estoppel. Issue preclusion "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007). In the Ninth Circuit,[12] issue preclusion applies "if three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first

---

[12] Ninth Circuit law supplies the general test for issue preclusion, but "for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). In determining whether a case presents the same issue already litigated and decided in an earlier case, the Ninth Circuit uses a four-factor test:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding? (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? (4) how closely related are the claims involved in the two proceedings?

*Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995).

Issue preclusion in the patent context is "not limit[ed] . . . to patent claims that are identical," and the "mere existence of different language" in different patent claims does not of itself create a new issue for purposes of issue preclusion. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *see also Shen Wei (USA), Inc. v. Ansell Healthcare Prods., Inc.*, No. 05-cv-6003, 2008 WL 5770849, at *2 (N.D. Ill. May 29, 2008) ("The doctrine of collateral estoppel applies to common issues with regard to parent and child patents."). Finally, issue preclusion is not a formulaic doctrine. It "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book." *Bourns, Inc. v. United States*, 537 F.2d 486, 497 (Ct. Cl. 1976) (quotations omitted). "[R]ealism and rationality" govern, *id.*, and a court must be guided by its "sense of justice and equity." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971).

Here, the dispute is—again—whether the "issues" are substantially the same. SimpleAir had a full and fair opportunity to litigate infringement in *SA I* and *II/III*. *SA I* ended with a final judgment on the merits following a jury trial and a full appeal before the Federal Circuit. *SA I*, Dkt. 775; *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (applying issue preclusion, where plaintiff "had a full and fair opportunity to be heard at the trial and appellate levels"). *SA II/III* ended with a final judgment on the merits following a jury trial and SimpleAir chose not to appeal

(and in fact, withdrew its JMOL). *See Applied Med. Res. Corp. v. United States Surgical Corp.*, No. SACV-03-1267-CJC-MLG, 2004 WL 7333721, at *2 (C.D. Cal. Dec. 7, 2004) (applying issue preclusion, where defendant had a full and fair opportunity to litigate following jury verdict that was not appealed). And there is no question that SimpleAir was a party to those preceding litigations. *Thornton*, 425 F.3d at 1166. The only remaining question is whether SimpleAir is now trying to relitigate the same issues that were necessarily decided in *SA I* and *II/III*. The answer is yes.

As explained above, the Federal Circuit made a final and binding holding that the only invention disclosed in the specification of the '914 Patent—which has the same specification as the asserted patents here—is a system using two different paths to deliver messages to a remote device. *See supra* § II(D). The Federal Circuit in *SA I* held that "Google does not infringe because its accused system sends messages over the same communication path as other Internet data—it does not use a separate path." 820 F.3d at 431 (quotations omitted). The same issue is present here, because as explained above, each of the asserted claims in *SA IV* and *SA V* are directed to this same two-path architecture.[13] *See supra* § III(A)(3).

Additionally, as explained in detail above, Google argued in the *SimpleAir II/III* that GCM does not address data blocks as required by the asserted '279 claims. *See supra* § III(A)(4). After listening to this argument, the jury in *SA II/III* agreed with Google in rendering a jury verdict of non-infringement. *SA II/III*, Dkt. 348. The same issue is present here, because as explained above, each of the asserted claims require assigning addresses to data blocks, which the jury in *SA II/III* already determined the

---

[13] It is immaterial that some of the *SA V* asserted claims do not contain the "online or offline" language. As the Federal Circuit has held, "[o]ur precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow*, 735 F.3d at 1342 (emphasis in original).

GCM does not do. *See supra* § III(A)(4).

Therefore, *SA IV* and *SA V* will turn on the same arguments and evidence presented to support non-infringement in *SA I* and *II/III*. The accused products here are the same as the accused products in *SA I* and *II/III*, and the evidence that is relevant to infringement—specifically, whether the accused products practice the claimed two-path architecture and address data blocks—has not changed.[14] Accordingly, SimpleAir's infringement claims here are precluded based on collateral estoppel.

**C. The Asserted Claims Do Not Contain Patent-Eligible Subject Matter Under Section 101**

1. <u>The Relevant Law Of Section 101</u>

An invention is patentable if it is a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, "[w]e have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). *Alice* endorsed a two-step analysis for determining whether patent claims fall within a patent-ineligible exceptions. The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*. at 217. "If so, we then ask, '[w]hat else is there in the claims before us?'" *Id*. If the claims are directed to a patent-ineligible concept under step one, the analysis proceeds to the step two. "We have described step two of this analysis as a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. at 217-18 (brackets in original, quotations omitted).

---

[14] The patents expired on January 24, 2017—five months after *SA I*'s final judgment, further evidencing that implicated discovery would be similar. *See* Exs. F-M.

2. SimpleAir's Attempt To Avoid Preclusion Renders The Patents Invalid Under Section 101

SimpleAir's infringement claims are precluded because the asserted claims cover the same subject matter as the *SA I* and *II/III* patents. However, if SimpleAir argues against preclusion by stating that the asserted claims do not include the described the two-path architecture (*i.e.*, the online/offline requirements)—then asserted claims must be invalid for claiming patent-ineligible subject matter under Section 101. In finding that the *SA II/III* patents were valid under Section 101, the *SA II/III* court relied on this two-path architecture to reach its decision. Without this two-path architecture, the claims here (which, as explained above, are directed to the same invention as the *SA II/III* patents) must be invalid under Section 101.

In *SA II/III*, Google moved for summary judgement of invalidity under Section 101. *SA II/III*, Dkt. 198. SimpleAir argued in opposition that the claimed two-path architecture is not an abstract idea. *SA II/III*, Dkt. 284 at 62:21-63:1. SimpleAir even characterized the two path architecture as "the *essence* of what the claims are directed to." *SA II/III*, Dkt. 224 at 7 (emphasis added). The *SA II/III* court adopted SimpleAir's reasoning and relied heavily on the claimed online and offline features—the two path architecture—to hold that the claims were valid. *SA II/III*, 136 F. Supp. 3d 745, 751-752 (E.D. Tex. 2015) ("[T]he claims require that transmission of the information occurs whether the remote computing devices are online or offline," and therefore, "[a]t the very least, the Patents-in-Suit disclose particular solutions for the problem of the [l]ack of notification of information delivery when offline.") (quotations omitted).

If SimpleAir now argues that preclusion does not apply because the asserted claims do not contain this two-path architecture, it would remove the very basis on which SimpleAir previously argued the prior claims were valid under Section 101. Without the two-path architecture (which is insufficient in any event, *see infra*), nothing patentable remains in the claims under Section 101.

3. Notwithstanding Preclusion Arguments, The *SimpleAir IV* And *V* Patents Do Not Contain Patent-Eligible Subject Matter

Irrespective of SimpleAir's arguments against preclusion, the asserted claims are invalid on their face for failing to claim patent-eligible subject matter under Section 101. The simple comparison of the claims demonstrates that the asserted claims are broader and more abstract than those asserted in *SA II/III*. The asserted claims are simply directed to transmitting data to selected remote computing devices. They cover the abstract idea of receiving, sorting, packaging, and transmitting information. They implement this idea using generic computer hardware and generic computer functions—such as "generating," "receiving," and "parsing" the information. Such generic and high-level computer elements do not impart patent-eligibility under Section 101. The claims do not provide any particular computer protocols or specific operations as to how these steps could be implemented.

A claim is representative of the remaining claims, it is proper for a court to find all of the claims ineligible based on an evaluation of that single claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). All of the asserted claims recite the same abstract idea of receiving, sorting, packaging, and transmitting information and are confined to "well-known, routine, and conventional" technology. *Content Extraction*, 776 F.3d at 1348-49. They "contain only minor differences in terminology but require performance of the same basic process," and thus, "they should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (quotations omitted).

Claim 1 of each asserted patent is representative of the other asserted claims in their respective patents (collectively, the "Representative Claims"). All the Representative Claims are directed to the idea of a first group sending data, a second group receiving the data and sorting the data, and a third group packaging the sorted data and sending it back out to a forth group. This is shown by the color coding in

Exhibit E (blue for first group sending data, green for the second group receiving the data and sorting the data, yellow for the third group packaging the sorted data and sending it back out, and purple for the fourth group receiving the data). These claims require a server, such as a central broadcast server or in some cases any server, and computers to perform these generic functions. None of the claims provide any particular computer protocols as to *how* these steps would be implemented on a server and computer. The remaining independent claims do not substantively differ from the Representative Claims to warrant a separate analysis under *Alice*, as shown in Exhibit E. But this is to be expected, because the asserted patents share the same specification, and thus must be supported by the same written description.

None of the other dependent claims provide additional limitations that make the asserted claims any less abstract. Claims 2, 3, and 16 in the '838 and '048 Patents only add high level descriptions of assigning and providing addresses. Claims 4, 5, 17, and 18 in the '838 and '048 Patents only add high level descriptions controlling the display of data. Claims 8-10, 12, 13, 21, 26, and 28 in the '838 and '048 Patents only add high level descriptions of sending and receiving messages to and from the remote devices for ads or services. Claims 14 and 15 in the '838 and '048 Patents only add high level descriptions of having the receiver and computing device in the same apparatus. Claims 22-23 in the '838 and '048 Patents only add high level descriptions of an on and off state. Claims 27 and 30 in the '838 and '048 Patents only add high level descriptions that viewers view the information. Claim 29 in the '838 and '048 Patents only adds a high level description of the remote devices being computers, phones, or televisions. Claims 2 and 10 of the '899 Patent only add high level descriptions that the data contains a header and packet data. Claims 2-5 and 11-13 of the '899 Patent only add high level descriptions that the messages may be for some or all of the remote devices. Claims 6 and 14 of the '899 Patent only add high level descriptions that the second gateway assigns addresses. Claims 7 and 15 of the '899 Patent only add high level descriptions that the viewers are software. Claims 8 and 16

of the '899 Patent only add high level descriptions that the data is email. Claim 2-5 and 11 of the '106 Patent only add high level descriptions that the information provider provides requested or specific information. Claim 10 of the '106 Patent only adds a high level description that the information provider provides viewers to the remote devices. None of the dependent claims add any further particular computer protocols or operations as to how the claimed steps would be implemented.[15]

**(a) The Representative Claims Are Directed Towards The Abstract Idea Of Receiving, Sorting, Packaging, And Transmitting Information Under *Alice* Step One**

The asserted claims fail *Alice* Step One because they are directed to the abstract idea of receiving, sorting, packaging, and transmitting information. The issue is whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017). Receiving, sorting, packaging, and transmitting information is the fundamental idea the asserted claims, which then invoke generic and well-known computer technologies, such as a server, for performance. The Federal Circuit has repeatedly held that claims like these are invalid. *See, e.g.*, *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("An abstract idea on an Internet computer network or on a generic computer is still an abstract idea.") (quotations and citation omitted)).

As evidence that the claims do not require any particular computer protocols or operations, the asserted claims mimic human activity. For example, the asserted claims cover the very old idea of how grades are collected for college students and sent out in report cards. A university has multiple students in multiple classes. Each teacher—the "information provider"—assigns grades to each student in their class by

[15] Should SimpleAir separately argue the patentability of any other claim, Google reserves the right to address such claim in its reply brief.

the student's name or student number—"one or more related categories or subcategories of information." Those grades would then be submitted to an administrative group—"the parsers"—who would collect all the grades for all students. That group would take the grades and reorganize and categorize them by individual student—"breaking or dividing the received data into components"—so the university would know all the grades received by each individual student in all their classes. All that information would then be organized so that individual report cards could be created for reach student—"building data blocks from the parsed data." The report cards for each student would be put in envelopes such that each envelope would contain a report card with only the grades for the individual student, and those envelopes would be addressed to each individual student—"assigning addresses to the data blocks." Finally, the report cards would be sent out to each student at each student's specific address—"transmitting the messages." Each of the sent report cards would go to a specific student's home ("remote device") address and no report cards are sent unaddressed or randomly—"to the selected remote computing devices to be viewed by viewers specific to the information providers in each of the selected remote computing devices." If this was done with a general server and computer, and the grades were emailed to students, that process could also read on the asserted claims.

The process outlined above is the type of collecting and analyzing of information that the Federal Circuit has ruled is "within the realm of abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (holding patent in-eligible claims directed to "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions").[16] And the use of

[16] After the *SA II/III* 101 MSJ ruling issued, a sister court disagreed with that ruling and found similar claims invalid under Section 101. *See Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1272 (D.N.M. 2016), *aff'd sub*

generic computers and servers does not make the claims patent-eligible. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016) (finding the asserted claims patent-ineligible where the "claims merely implement an old practice in a new environment" and holding that the improvement for patent eligibility cannot be derived solely by incorporation of a computer to automate further tasks).

The Representative Claims also recite the idea as a function or result, rather than a particular way of performing that function or achieving that result, which further indicates an abstract idea. *See Elec. Power*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101."); *see also Power Analytics Corp. v. Operation Tech. Inc.*, 2017 WL 5468179, at *4 (C.D. Cal. July 13, 2017), *aff'd sub nom.* 748 F. App'x 334 (Fed. Cir. 2019) ("This is another indicator of abstractness."). Claim 1 of the '838 Patent recites that "a first software subsystem" is "configured to receive data from one or more information providers, wherein each information provider comprises a provider of one or more related categories or subcategories of information." Ex. J at 32:19-41. The language focuses on the result of receiving data from information providers rather than *how* the operation is achieved. Claim 1 of the '048 Patent recites a method of "parsing the data by one or more parsers" where the "parsing comprises breaking or dividing the received data into components whose content or format can be analyzed, processed, or acted upon." Ex. K at 32:20-38. This language focuses on the result of the parsing rather than how the parsing is performed. Claim 1 of the '899 Patent recites that "one or more parsers comprising computer

---

*nom. Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) ("The Court disagrees with Judge Gilstrap's conclusions in SimpleAir[.]"). The *Front Row* court found that the *SA II/III* claims "encompass[] a broad swathe of human activity" and "effectively claim[] the idea of packing and transmitting information, because supposedly "'key features'"—such as a "'central broadcast server'"—recite components that any similar system would require." *Id.* at 1273. Not all the Representative Claims even have the "central broadcast server" limitation.

software programs, routines or functions " are "configured to break or divide at least some of the data received from the information providers into components whose content or format can be analyzed, processed, or acted upon." Ex. L at 32:49. This language focuses on the result of breaking or dividing some of the data rather than how the function is completed. Claim 1 of the '106 Patent recites a method such that "the transmit[ted] data" is "viewed by a viewer specific to the information provider in each of the selected remote computing devices." Ex. M at 32:49-62. This language focuses on the resulted viewing, and not how the viewing is achieved. None of these limitations are sufficient to impart patent eligibility. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) (holding that the "the claimed instructions do not identify how the attention manager performs the function" and "do not impose meaningful limitations on the purported solution . . . that would improve a computer as a tool, but merely recite routine and conventional steps in carrying out [a] well-established practice"); *see also Power Analytics Corp.*, 2017 WL 5468179, at *4-5. The Representative Claims are directed to an abstract idea at *Alice* Step One.

#### (b) The Computer Elements Do Not Save The Claims From Abstractness Under *Alice* Step Two

None of the Representative Claims have elements (individually or collectively) that save the claims from abstractness. Under *Alice* Step Two, courts "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. This inventive concept must do more than simply recite well-understood, routine, conventional activity." *FairWarning IP*, 839 F.3d at 1093(quotations and citations omitted). While the claims do require receiving, sorting, packaging, and transmitting the information using various computer elements, the computer elements are generic and high-level and are presented in purely functional form. Claim 1 of the '838 Patent recites "a first software subsystem, a "parser," a "second software subsystem," and a "third software subsystem." Ex. J at 32:19-41. Claim 1 of the '048 Patent recites "a provider" and

"remote computing devices." Ex. K. at 32:20-38. Claim 1 of the '899 Patent recites "a first gateway," "parsers," and "a second gateway." Ex. L at 32:49-67. Claim 1 of the '106 Patent simply recites "an information provider." Ex. M at 32:49-62. Nothing in the Representative Claims transforms these abstract ideas themselves into patent-eligible subject matter. *Elec. Power Grp.*, 830 F.3d at 1355 (holding that "selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas.").

The specification further underscores the alleged invention is applied to conventional technology. For example, the specification lists several conventional prior art transmission networks and then states that "[t]he present invention is designed to operate with any of the above known or developing transmission networks." *See, e.g.*, Ex. J at 9:41-43. The Representative Claims here are just like the claims in *Elec. Power Grp.* and *Power Analytics Corp.*, as they do not require any unconventional components or even an unconventional combination of well-known components. *See Elec. Power Grp.,* 830 F.3d at 1355 (holding the claims do not require any nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces, but merely call for performance of the claimed information collection, analysis, and display functions "on a set of generic computer components" and "display devices."). There is no "inventive concept" in any of the Representative Claims to be found at *Alice* step 2. In sum, all the asserted claims from the *SimpleAir IV* and *V* patents are invalid for claiming ineligible subject matter per Section 101.

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that SimpleAir's claims here be dismissed based on the doctrines of claim preclusion, *Kessler*, and issue preclusion, or in the alternative, because SimpleAir's claims contain patent-ineligible subject matter under 35 U.S.C. § 101.

DATED: May 1, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Charles K. Verhoeven*

Charles K. Verhoeven

*Attorney for Google LLC*

# CERTIFICATE OF SERVICE

I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 50 California Street, 22nd Floor, San Francisco, CA 91111.

On May 1, 2020, I served a copy of the following document(s) described as **GOOGLE LLC'S NOTICE OF MOTION AND CONSOLIDATED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(C); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**Served Electronically Via the Court's CM/ECF System:**

DOVEL & LUNER, LLP
John Jeffrey Eichmann
(State Bar No. 227472)
jeff@dovel.com
Simon Franzini
(State Bar #287631)
simon@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
(310) 656-7066
(310) 656-7069 (facsimile)

*Attorneys for SimpleAir, Inc.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 1, 2020 at San Francisco, California.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven